BOSTICK BURKS v. THE STATE.

No. 7729.  Decided November 14, 1923.

Rehearing denied March 26, 1924.

1.—Murder—Seized Property—Search Warrant.

Where, upon trial of murder, the defendant complained that the court below refused to return certain property, to-wit: a pair of pants which had been seized by the officers during the arrest of defendant, and also because these pants were admitted in evidence against him, held there is no reversible error.  Following  Welchek v. State, 93 Texas Crim. Rep., 271.

2.—Same—Return of Seized Property—Rule Stated—Cases Cited.

Where, in addition to the case discussed and analyzed in the Welchek case, appellant also cited certain other cases including the one of Bush v. U. S., 269 Federal, 455, this court must say that the holding in the said last case is so manifestly uncalled for in an effort to uphold the provisions of the Federal Constitution preventing unreasonable searches and seizures, etc., that this court does not care to discuss the principle involved any further than to refer to the Welchek case, and has no reason to believe that its conclusions in said Welchek case are out of harmony with reason, logic, law, or Constitution.

3.—Same—Evidence—Conversation.

Upon trial of murder there was no error in admitting in evidence testimony of a conversation had by defendant with the constable of the precinct, shortly before the homicide, in reference to a fine which the constable wanted to collect but which defendant could not pay as he claimed, because he had no funds.  This testimony shed light upon the financial condition of the defendant shortly before an effort upon his part to commit robbery.  Following  Armstrong v. State, 34 Texas Crim. Rep., 248, and other cases.

4.—Same—Hypothetical Questions.

The contention made by defendant that he was not allowed to ask certain hypothetical questions, in view of the explanation made by the trial judge, presents no error.

5.—Same—Evidence—Rebuttal—Rule Stated—Identification.

Much stress is laid by appellant upon the proposition that Mrs. Heffler was permitted to testify in rebuttal, that having seen and observed the appellant walking and noticed his gait and the kinds of steps that he took, etc., that in her opinion he was the man who shot her husband, held no error and was not involving the merits of the entire case.

6.—Same—Evidence—Identity of Defendant.

It has been held many times in this state that a witness may state his belief or his best impression as to the identity of the defendant or any other party, and the fact that witness may not be absolutely certain in such identification goes only to the weight of the testimony and not to its admissibility and there was, therefore, no error in permitting the wife of the deceased to testify that in her opinion from the size, gait, walk, etc., he was the party who shot her husband.  Following  Tate v. State, 35 Texas Crim. Rep., 234, and other cases.

97 T. C.—8.

**7.—Same—Charge of Court—Accomplice.**

Upon trial of murder there was no error in the trial court to charge on accomplice's testimony, and to refuse requested charges on the same subject, nor was there error in the main charge that the mere presence of one without criminal connection with the offense would not make him an accomplice, nor the mere knowledge that the crime had been committéd, etc.

**8.—Same—Charge of Court—Imperfect Self-Defense—Manslaughter.**

There was no error in failing to charge on the facts in the instant case on the theory of imperfect self-defense, or upon manslaughter.

**9.—Same—Private Prosecutor Argument of Counsel.**

The argument of private prosecutor to the effect that if appellant, was sent to the penitentiary he would kill one of the fellow convicts for thirty-five cents, does not seem to be of that character that would call for a reversal.

**10.—Same—Rehearing—Accomplice Testimony.**

The requested charge on accomplice's testimony was couched in almost the identical language of which complaint is made in the main charge, and there is, therefore, no error.

Appeal from the District Court of Smith. Tried below before the Honorable J. R. Warren.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Butler, Price & Maynor,* for appellant. On question of return of seized property: Amos v. U. S., 254 U. S.; Goulded v. U. S., 254 U. S., 265; Silverthorn v. U. S., 251 U. S., 385; Weeks v. U. S., 232 U. S., 393, and cases cited in opinion. Dupree v. State, 119 S. W. Rep., 301.

On question of accomplice's testimony: Cavaness v. State, 74 id., 908; Moore v. State, 128 id., 115; Dobbs v. State, 100 id., 946.

On question of argument of counsel: Holloway v. State, 54 Texas Crim. Rep., 465.

*R. G. Storey,* Assistant Attorney General, and *Galloway Calhoun* and *Simpson, Lasseter & Simpson,* for the State. On question of search and seizure: Welchek v. State, 93 Texas Crim. Rep., 271, and cases cited in opinion.

On question of accomplice's testimony: Elizondo v. State, 20 S. W. Rep., 560; Crawford v. State, 34 id., 927; Creech v. State, 158 id., 277; Haney v. State, 197 id., 1102.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Smith County of murder, and his punishment fixed at fifteen years in the penitentiary.

On the night of the alleged homicide deceased Heffler was in his store at work upon his books. His wife was present in the room. A

masked man wearing an overcoat with gloves on his hands appeared and presented a pistol at Mrs. Heffler. She testified that when he did this she looked immediately at her husband and that her assailant turned also and gave three jumps toward deceased and shot him with a pistol. She further stated that her husband was trying to open his desk and had gotten his hand in the drawer of the desk when shot. She also said that the man who shot her husband then ran down the store and out. The State introduced a witness who testified that on the night in question at the request of appellant he drove the latter in a Ford car out to the mouth of an alley at the other end of which, a block distant from the place where witness and appellant stopped the car, was situated the store of Mr. Heffler. Witness said that appellant told him not to stop the engine, that he would be back in a minute or two; that he had asked appellant repeatedly while going out there where he wanted to go and what he was going to do and he said that appellant told him he was going after some stuff. He said that appellant had on an overcoat and a pair of light blue pants. This witness also testified that in a few minutes after appellant went down the alley toward where the Heffler store was, he came back quite rapidly and had a pistol in his hand and a mask on his face; that he came up to the car, it then being in the night-time, and asked witness who he was. Witness replied and asked appellant who he was and appellant said it was Bunk, the nickname of appellant apparently being Bunk Burks. This witness testified that appellant told him to drive away from there and drive like hell, and when he asked him as they were driving away what the trouble was, appellant said that he had to shoot Heffler. The witness said he then told appellant that he must get out of the car as quickly as he could and that he stopped the car presently and that appellant got out. When arrested the officers took from appellant a pair of shoes on the bottom of one of which was a dark stain which upon investigation by the State chemist was certified to by him as being made by blood. Mrs. Heffler testified that the party who shot her husband stepped in the blood shed by her husband. Subsequent to the arrest of appellant and at a time when he seems not to have been at home, officers went to his house and searching found a pair of light blue pants which were exhibited before the jury and identified by Mrs. Heffler as being the pants worn by her husband's slayer, or similar to them.

Appellant's first two bills of exception complain of the refusal of a motion made by him prior to the calling of the case for trial, to have returned to him the pants in question; and to the action of the learned trial judge in permitting the pants to be used in evidence, exhibited to Mrs. Heffler in the presence of the jury, and to have her testify that they were the same or similar pants to those worn by her husband's assailant. Without going into the details of the objections made the basis of said bills of exception, they present the same

objections and are based on the same reason that were disposed of adversely to the accused in the case of Welchek v. State, 93 Texas Crim. Rep., 271. The first eighteen pages of the able brief of appellant is devoted to a review of the Welchek opinion and the cases discussed therein, in an effort to show that said opinion is unsound and that it should not be followed by his court longer. In addition to the cases discussed and analyzed in the Welchek case appellant also cites us to the cases of Laughter v. United States, 259 Federal, 94; Bush v. United States, 269 Federal, 455, and Slusser v. United States, 270 Federal, 818, each being opinions rendered by Federal district or circuit courts. We discuss the Laughter case no further than to say that it turns upon the same proposition in Weeks v. United States, discussed at length in the opinion in Welchek, supra, the point involved being the refusal of a motion to require the return to the accused of private papers taken from his pocket by the United States Marshal at the time of his arrest, the court rendering the opinion concluding that under the Weeks' case, supra, the motion should have been granted. We declined in rendering the opinion in the Welchek case to discuss rulings of this kind because uncalled for and unnecessary to a decision of the matters before us. In Slusser v. U. S., supra, the Federal court held that officers having searched and seized an automobile of the accused and having found therein quantities of intoxicating liquor, that upon motion made before the call of the case for trial the automobile should have been returned to the accused. Such a holding is so completely at variance with our conclusion in the Welchek case as to call for no further discussion or statement than that we do not agree with it if on similar facts under the laws of this State. Bush v. U. S., supra, appears to be a case in which an indictment for receiving stolen property was quashed because the property referred to in the indictment was found by the officers in the possession of the accused while said officers were searching the house of the accused under an invalid search warrant looking for intoxicating liquor. While so engaged the officers found a case of stolen goods and the accused was indicted for receiving said case of goods under such circumstances and conditions as to render her guilty of receiving stolen property. As we view the matter such a holding as this is so manifestly uncalled for in an effort to uphold the provisions of the Federal Constitution preventing unreasonable searches and seizures, and so patently operates to prevent the prosecution and conviction of persons accused of crime, the fruits of whose crimes are found upon their premises or in their houses by officers or others who might be there without warrant of law, or who might be there under process of law searching for other things, as that we do not care to discuss the principle involved any further than to refer to the Welchek case, supra. A holding that would lead to the inevitable conclusion that officers who went into the house of one suspected of crime, armed with

a valid search warrant accurately describing the things they were privileged to search for, who in the course of their search found property undeniably stolen or weapons admittedly used in the commission of homicides or other crimes, could not produce the articles thus found in an attempt to prosecute the possessor of the premises or of the property, for theft or receiving stolen property, or murder or burglary as the case might be; and thus deprive the government of its right to prosecute offenders in cases of theft, murder, etc., because forsooth the searching officers did not go to the premises armed with a warrant describing the particular property, is a view that we trust will never be entertained by this court. The Bush case seems to rest on the proposition that to use against the accused the finding of the case of stolen goods, would in some way be compelling the accused to give testimony against herself. We have tried in vain to find reason for such conclusion if it amounts to saying that if the officers went with a valid search warrant and found the property they were looking for in the possession of the accused and offered it in evidence against her, some how, this would not be compelling her to testify against herself,—but if the officers go with a search warrant invalid for some reason and find the property they cannot introduce evidence of same against her because that would be compelling her to give evidence against herself; or if the officers go with a search warrant and find other property than that described in the indictment, they cannot use proof of such finding against the accused because it would be compelling her to give evidence against herself. We pursue a discussion of this part of appellant's contention no further. We have no reason to believe our conclusion in the Welchek case out of harmony with reason, logic, law or Constitution.

Appellant objected to testimony of a conversation had by him with the constable of the precinct shortly before the homicide in reference to a fine which the constable wanted to collect but which appellant could not pay because, as claimed by him, he had no funds. The constable was going out of office and so informed appellant who promised to get the money for him shortly. We do not agree with the contention of learned counsel for appellant that this was proving another and distinct offense without connection with the one on trial. We rather think the evidence classifies itself as shedding light upon the financial condition of the accused shortly before an effort on his part to commit robbery. Such proof is held admissible. Armstrong v. State, 34 Texas Crim. Rep., 248; Garza v. v. State, 39 Texas Crim. Rep., 362; Perry v. State, 69 Texas Crim. Rep., 644, 155 S. W. Rep., 263.

The contention made by appellant in his 4th bill of exceptions that he was not allowed to ask certain hypothetical questions in view of the explanation made by the learned trial judge, presents no error.

Much stress is laid by appellant upon the proposition that Mrs.

Heffler was permitted to testify in rebuttal that having seen and observed the appellant walking and noticed his gait and the kind of steps that he took, etc., that in her opinion he was the man who shot her husband. The authorities cited by appellant would seem to be those inhibiting a witness from giving an answer that would involve the merits of the entire case. There seem other objections made by appellant to the statement of the witness, as set out in his bill of exceptions but the one just referred to is the principal point in the objections made. This bill of exceptions is qualified by the learned trial judge who refers to and makes part of the bill, the testimony of the witness on the matters involved in the objection. There is not a particle of dispute over the proposition that the husband of Mrs. Heffler was shot and killed, nor is there any dispute of the fact that the party who was seen in the store at the time of the occurrence, was the slayer. No other persons were in the store aside from deceased, Mrs. Heffler and the person who fired the shot that killed Heffler. The fact that in asking the question of the witness to which the objection was made, same was so framed as to ask her for her judgment as to the identity of the appellant from his size, gait, walk, etc., with the party who shot her husband, would not affect the admissibility of her conclusion on the question of identity. This was not calling for any opinion as to the whole case. The only thing involved in her testimony on this point was the identity of the man who was present in the store that night with appellant and we think no more harm could have resulted if the question had been thus framed. It has been held many times in this State that a witness may state his belief or his best impression as to the identity of the defendant or any other party, and the fact that witness may not be absolutely certain in such identification goes only to the weight of the testimony and not to its admissibility. Tate v. State, 35 Texas Crim. Rep., 234; Brooks v. State, 37 S. W. Rep., 739; Coffman v. State, 51 Texas Crim. Rep., 486; Bozan v. State, 59 Texas Crim. Rep., 213; Sparkman v. State, 51 Texas Crim. Rep., 427; Adams v. State, 65 Texas Crim. Rep., 416, 143 S. W. Rep., 185; Grant v. State, 67 Texas Crim. Rep., 155, 148 S. W. Rep., 760; Perry v. State, 69 Texas Crim. Rep., 644, 155 S. W. Rep., 263.

Appellant also complains of the charge of the court on the subject of accomplice testimony and in this connection, of the refusal to give special charges sought by him upon the same subject. We do not think the learned trial judge erred in refusing to tell the jury that the witness Levine was an accomplice. He did submit the question to the jury as to whether such witness was an accomplice. We do not think it error to have submitted to the jury in this connection in the main charge the proposition that the mere presence of one without criminal connection with the offense would not make him an accomplice; and the further proposition that mere knowledge that a crime has been

committed and concealment of such knowledge would not constitute the person having or concealing such knowledge an accomplice.

We do not 'think the facts in this case call for any charge either upon the theory of imperfect self-defense, or upon manslaughter.

The argument of private prosecutor to the effect that if appellant was sent to the penitentiary he would kill one of his fellow convicts for thirty-five cents, does not seem to be of that character that would call for a reversal.

Being unable to agree with any of the contentions made by appellant, an affirmance will be ordered.

*Affirmed.*

ON REHEARING.

March 26, 1924.

HAWKINS, JUDGE.—We have carefully considered appellant's motion for rehearing and the argument presented in support thereof. All questions presented were discussed in our original opinion and we believe were correctly decided. They are interesting, but we see no good reason for writing further upon them as it would necessarily involve mostly a repetition of what has already been said by us. Our attention has been directed to the criticism of the charge on accomplice testimony. We observe that a special charge requested is couched in almost the identical language at which complaint is made.

Believing the case to have been correctly disposed of the motion is overruled.

*Overruled.*