Joe NAVARRO, Sr., Appellant,

v.

The STATE of Texas, Appellee.

No. 04–90–00168–CR.

Court of Appeals of Texas, San Antonio.

May 22, 1991.

Discretionary Review Refused Sept. 18, 1991.

Larry Zinn, H. Jack Pytel, Jr., James William Blagg, San Antonio, for appellant.

Reynaldo S. Cantu, Sp. Prosecutor, Brownsville, for appellee.

Before CHAPA, PEEPLES and BIERY, JJ.

## OPINION

CHAPA, Justice.

Appellant, Joe Navarro, Sr., appeals his conviction by jury for the offense of tampering with a witness, in which the jury assessed punishment at imprisonment for six years.

The dispositive issues are:

1) whether the trial court committed reversible error in denying appellant's motion to quash because the indictment failed to allege a crime;

2) whether there is insufficient evidence to sustain the conviction;

3) whether the trial court committed reversible error in failing to disclose favorable evidence to the appellant which had been withheld by the prosecution;

4) whether the trial court committed reversible error in failing to submit, to the jury, the lesser included offense of attempting to tamper with a witness to the jury; and,

5) whether the trial court committed reversible error in denying a mistrial because of an improper remark by the prosecution during argument.

Initially, appellant contends that the trial court should have sustained his motion to quash, because "[t]he indictment does not allege that the benefit was offered 'in exchange for' for [sic] false testimony."

TEX.PENAL CODE ANN. § 36.05 (Vernon 1989), entitled 'Tampering with Witness,' provides, in part, as follows:

> (a) A person commits an offense if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding ...:
>
> (1) to testify falsely; ...

The indictment in the present case reads, in part, that:

> ... on or about the 2nd day of JANUARY, A.D., 1987, *JOE NAVARRO, SR.,* hereinafter referred to as defendant, did then and there *with intent to influence ANSELMO MARTINEZ, a witness and prospective witness in an official proceeding, to-wit:* a Felony trial styled *the State of Texas vs. Tina Louise Miranda, Cause Number 86–CR–4637A,* pending in the 290th Judicial District Court of Bexar County, Texas, *offer and confer and agree to confer a benefit,* to-wit: to use LAWFUL CURRENCY OF THE UNITED STATES OF AMERICA to purchase a business located in Bexar County, Texas, from Anselmo Martinez in exchange for Anselmo Martinez giving a written statement to Joe Navarro, Sr., that Anselmo Martinez' previous signed written statement to San Antonio Police Department Detective V. Mena on September 25, 1986, concerning what Andy Miranda had told Anselmo Martinez before Andy Miranda died was a false statement, *with intent to cause Anselmo Martinez to testify falsely in 86–CR–4637A, styled the State of Texas vs. Tina Louise Miranda.* (Emphasis added.)

Article 21.11 of the Texas Code of Criminal Procedure (Vernon 1989), provides:

> An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment; and in no case are the words "force and arms" or "contrary to the form of the statute" necessary.

■ The appellant does not contend that the wording of the indictment does not "enable a person of common understanding to know what is meant", that he has not received sufficient "notice of the particular offense with which he is charged", or that the court was unable, "on conviction, to pronounce the proper judgment." TEX. CODE CRIM.PROC.ANN. art. 21.11 (Vernon 1989). Appellant instead insists that the indictment is fatally defective because it "does not allege that a benefit was offered 'in exchange for' for [sic] false testimony" and that therefore, the indictment does not allege an offense under TEX.PENAL CODE ANN. § 36.05 (Vernon 1989). We hold that appellant has failed in his burden of showing that the indictment is required to read as suggested, or that it insufficiently alleges the charge intended; therefore, the trial court was correct in overruling the motion to quash. The point is rejected.

Appellant next contends that there is insufficient evidence to support the conviction because the State failed to present evidence that the appellant offered money to the witness for false testimony or with the intent to cause the witness to testify falsely; additionally, appellant insists that a reasonable hypothesis exists that the

money was not offered to the witness for false testimony but to cause the witness to leave town and not testify at all.

In reviewing the sufficiency of the evidence, this court must determine whether, considering the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Little v. State*, 758 S.W.2d 551, 562 (Tex.Crim.App.), *cert. denied*, 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). This is the standard of review in both direct and circumstantial evidence cases. *Butler v. State*, 769 S.W.2d 234, 238 (Tex.Crim.App.1989); *Dickey v. State*, 693 S.W.2d 386, 387 (Tex. Crim.App.1984). In applying this standard to circumstantial evidence cases, however, we consider whether the circumstances exclude every other reasonable hypothesis except that of the guilt of the accused. *Butler*, 769 S.W.2d at 238 n. 1; *Humason v. State*, 728 S.W.2d 363, 366 (Tex.Crim.App. 1987); *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Crim.App.1983) (opinion on rehearing). If the evidence supports a reasonable inference other than finding the essential elements of the crime, then no trier of fact could rationally find the accused guilty beyond a reasonable doubt. *Carlsen*, 654 S.W.2d at 449–50; *Freeman v. State*, 654 S.W.2d 450, 456–57 (Tex.Crim.App.1983) (opinion on rehearing); *Denby v. State*, 654 S.W.2d 457, 464 (Tex.Crim.App.1983) (opinion on rehearing).

Proof which amounts to only a strong suspicion or mere probability of guilt is insufficient to support a conviction. *Humason*, 728 S.W.2d at 366; *Moore v. State*, 640 S.W.2d 300, 302 (Tex.Crim.App. 1982). "It is not necessary, however, that every fact point directly and independently to the guilt of the accused, and the cumulative force of all the incriminating circumstances may be sufficient to warrant a conclusion of guilt." *Bryant v. State*, 574 S.W.2d 109, 111 (Tex.Crim.App.1978). However, "[a]n alternate hypothesis of guilt is not a standard by which evidence sufficiency is measured: it is a 'guideline for assaying whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" and "simply because appellant presented a different version of the events, the evidence is not rendered insufficient." *Anderson v. State*, 701 S.W.2d 868, 872 (Tex.Crim.App.1985).

The evidence viewed in the light most favorable to the verdict reflects that Andres Miranda was murdered, and before he died, he made a statement to the witness, Anselmo Martinez, regarding who attacked him; that the witness Martinez gave a sworn statement to Detective Mena, stating that, in a dying declaration, the deceased Andres Miranda told him that it was Miranda's wife [Tina Louise Miranda], brother-in-law, and cousin who had attacked him; that thereafter, appellant, whom Martinez had never met before, began frequenting his bar; that although Martinez did not have his bar for sale, appellant offered to purchase the bar from him; that Martinez told the appellant that he would sell his bar for $15,000.00; that after advising Martinez that his attorney had seen the place and approved the purchase by the appellant, the appellant appeared at his bar with two papers, one in English and one in Spanish, which Martinez assumed were the transfer papers; that appellant gave Martinez the papers and asked him to sign them after reading them; that since Martinez does not read English, he read the Spanish paper only, which was, in fact, an affidavit which Martinez stated read as follows: "I, Anselmo Martinez Quijano, that I declare that what I told Detective Mena is a lie"; that when Martinez was asked by appellant if he was going to sign the papers, Martinez told the appellant he would not because it would be perjury; that, thereafter, the appellant suggested that Martinez sign the papers, take the money, and disappear to Puerto Rico, which Martinez refused to do; that Martinez thereafter sold the bar to someone else, but continued living in a trailer behind the bar; that appellant nevertheless continued frequenting the bar, repeatedly offer-

ing to pay all expenses and take Martinez to Mexico; that a few days before Martinez was to appear as a witness in the trial of Tina Louise Miranda for the murder of Andres Miranda, Martinez was called to the bar at night by the appellant, who was in the company of several other men; that after a conversation regarding going to Mexico that very night with all expenses being paid by the appellant, Martinez felt it necessary to return to his trailer and hide, after simulating someone sleeping in his bed, "[b]ecause [Martinez] was given to understand that in all this relationship that the man [appellant] was looking for the means to eliminate [Martinez]." Considering the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found that the appellant offered money to the witness to cause false testimony and with the intent to cause the witness to testify falsely. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Little*, 758 S.W.2d at 562.

The appellant insists that a reasonable hypothesis exists that the offer of money was to cause the witness to disappear rather than to cause the witness to testify falsely, and that this hypothesis has not been excluded. We disagree. There was support in the evidence, and the jury was free, as the triers of the facts, to believe that the appellant initially wanted to cause false testimony, and when unsuccessful, later resorted to trying to cause the witness to disappear. The indictment here contained two counts, causing the witness "to testify falsely," and causing the witness "to absent himself from an official proceeding." Because the State chose to abandon the second charge, and proceed with the first one, does not justify the conclusion that a reasonable hypothesis is created thereby. The point is rejected.

■ Appellant next contends that the trial court committed reversible error "in failing to disclose evidence which was favorable to Appellant." The State argues that the evidence sought was work product, and contains no *Brady* material. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The complaint involves an interoffice memo from Assistant District Attorney Atwell to the District Attorney, which was sealed and made a part of the record before this court.

The "appellant does not have a general *right* to discovery of evidence in the possession of the State," and "[t]he issue, then, is whether the trial court abused its discretion in refusing to allow discovery...." *Quinones v. State*, 592 S.W.2d 933, 940 (Tex.Crim.App.1980) (emphasis in original). Further, the work product privilege extends to "summaries of the evidence or discussions about the offense that have been prepared for internal use of law enforcement officers," "investigative reports," "internal prosecution files or papers," and "statements prepared by law enforcement officers after interviewing prospective witnesses." *Id.* However, if the matter sought "contained exculpatory material it would be discoverable as a matter of constitutional right." *Id.*, quoting *Brady*, 373 U.S. 83, 83 S.Ct. 1194. But "[w]here [the] applicant actually knew the facts which were allegedly withheld, he cannot seek relief on the basis of the State's alleged failure to disclose those same facts." *Ex parte Russell*, 738 S.W.2d 644, 646 (Tex.Crim.App.1986).

The testimony of Atwell clearly disclosed that the memo in question was work product, prepared and intended as an interoffice memo to the district attorney. In fact, the memo is entitled "MEMORANDUM", is addressed to the district attorney and his first assistants, and addresses the subject: RECOMMENDATION OF A GRAND JURY NO–BILL CONCERNING WITNESS JOE NAVARRO. The memo primarily contains opinions of Atwell justifying his recommendations that the appellant be no-billed by the grand jury and does not contain any material that could be considered *Brady* material. Moreover, the cross-examination of Atwell, and other witnesses by appellant during the trial, discloses that the defense was aware of what the memo contained. Since the relevant matters contained in the memo in question involved what transpired between the assistant district attorney and the appellant himself at the time of the initial grand jury

investigation, it is apparent why the defense was aware of the contents of the memo. Therefore, appellant has not shown that the trial court abused its discretion. *Quinones,* 592 S.W.2d at 940.

Even if we could conclude, which we do not, that the material in the memo clearly contains *Brady* material, the error, if any, would not be reversible. To determine whether reversible error has occurred in a *Brady* complaint, three factors must be analyzed: "(1) the suppression of such evidence by the prosecution after a request by the defense; (2) the evidence's favorable character for the defense, and (3) the materiality of the evidence." *Butler v. State,* 736 S.W.2d 668, 670 (Tex.Crim.App.1987). "Where a general request is made, error only exists if there is a showing on appeal that undisclosed evidence exists which creates a reasonable doubt that did not otherwise exist"; additionally, "[w]here a defendant is diligent and makes a specific and relevant request for *Brady* information, failure of the prosecution to respond is reversible error if such evidence might have had an effect on the outcome of the trial." *Id.*

■ The trial judge correctly ruled that any testimony or evidence provided by appellant to the prosecution during the first grand jury proceeding was inadmissible because the appellant had not been properly warned. *See Albarqawi v. State,* 626 S.W.2d 136, 137 (Tex.App.—Eastland 1981, pet. ref'd). The trial court did not make the same ruling as to the second grand jury proceeding, because the evidence clearly reflected that the appellant had been properly warned, was represented by counsel, and that no effort was made by either the appellant or his counsel to invoke appellant's constitutional right against self incrimination. Further, as required by TEX.R.APP.P. 74, the appellant has failed to direct this court to the record, nor do we find anything in the record, to indicate that, during the trial, the prosecution used any information furnished by the appellant or statements made by the appellant. Therefore, even if the memo contained *Brady* material, "[s]ince it cannot be concluded

that the information omitted would have materially affected determination of the appellant's guilt or punishment, failure to disclose such evidence was not so prejudicial as to warrant reversal on the basis of denial of due process under *Brady." Butler,* 736 S.W.2d at 672.

■ Appellant further contends that the trial court committed reversible error in failing to instruct the jury on the lesser included offense of attempting to tamper with a witness. Appellant argues that a charge on the lesser included offense of attempt was required because he established 1) that the lesser included offense of attempt to tamper with a witness is included within the proof necessary to establish the charged offense of tampering with a witness, and 2) that there was evidence that if the appellant was guilty, he was only guilty of the lesser offense of attempt to tamper with a witness. *Creel v. State,* 754 S.W.2d 205, 210 (Tex.Crim.App.1988).

The alleged offense of tampering with a witness was complete when the appellant offered and conferred and agreed to confer a benefit (money) to the witness in a manner calculated to cause false testimony. The record is clear and uncontradicted that the benefit was offered by the appellant to the witness. Therefore, under the evidence in this record, if the appellant was guilty of anything, he was guilty of the charged offense only. The point is rejected.

■ Finally, the appellant urges that the trial court committed reversible error in failing to grant a mistrial when the prosecution speculated that had the witness gone to Mexico with the appellant, someone in Mexico might have been paid to injure the witness. The objection was made by the appellant, and the court instructed the jury to disregard the remarks of the prosecutor. However, the motion for mistrial was denied.

"It is well established that proper jury argument must fall within one of the following categories: (1) summary of the evidence; (2) reasonable deduction from the evidence; (3) in response to argument of opposing counsel; and (4) plea for law enforcement"; "[t]hus, a prosecuting attor-

ney is permitted in his argument to draw from the facts in evidence all inferences which are reasonable, fair and legitimate, but he may not use the jury argument to get before the jury, either directly or indirectly, evidence which is outside the record." *Borjan v. State*, 787 S.W.2d 53, 55–57 (Tex.Crim.App.1990). "Ordinarily, any injury from an improper jury argument is obviated when the court instructs the jury to disregard the argument, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment." *Melton v. State*, 713 S.W.2d 107, 114 (Tex.Crim.App. 1986).

The testimony of the witness Martinez disclosed that shortly before he was to appear as a witness in the Miranda murder trial, the appellant, who was in the company of several men and had a great deal of money on his person, had gone to see him and had insisted that Martinez accompany them to Mexico that very night at appellant's expense. Martinez testified that this occurrence caused him to go to his trailer and hide, after molding blankets into the form of a person, thereby simulating someone sleeping in his bed, "[b]ecause [Martinez] was given to understand that in all this relationship that the man [appellant] was looking for the means to eliminate [Martinez]." Thus, the remarks of the prosecution could be considered as a reasonable and fair inference drawn from the evidence. *Borjan*, 787 S.W.2d at 57. Nevertheless, the court sustained the objection, and instructed the jury to disregard the remark. We hold that if the remark was improper, the admonishment by the court was sufficient to remove any prejudicial effect upon the appellant. *Melton*, 713 S.W.2d at 114. The complaint is rejected.

The judgment is affirmed.